UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| LASHAWN ROBINSON, et al.,<br>    Plaintiffs,<br><br>    v.<br><br>DIANA WENTZELL, et al.,<br>    Defendants. | No. 3:18-cv-00274 (SRU) |

## ORDER ON MOTIONS FOR JUDGMENT ON THE PLEADINGS

Plaintiffs LaShawn Robinson, Nichole Burke-Kane, Natalie Delgado, Shara Ferguson, Marie Joulet, Tynima Toney, Juan Tirado, and Jahaira Velazquez ("Plaintiffs"), filed suit on behalf of themselves and their minor children against Defendants Dianna Wentzell, Commissioner of the Connecticut State Department of Education; Glen Peterson, Director of the Sheff and Regional School Choice Office; Allan Taylor, Chairperson of the Connecticut State Department of Education's Board of Education; Dannel Malloy, then-Governor of Connecticut; and George Jepsen, then-Connecticut Attorney General; ("State Defendants"), and Craig Stallings, Chairperson of the Hartford Public Schools Board of Education, all in their official capacities, alleging that the 75% minority cap on students attending Hartford magnet schools violates the equal protection clause of the Fourteenth Amendment (Count One), and that the "racial manipulation" of the Regional School Choice Office ("RSCO") lottery violates the equal protection clause of the Fourteenth Amendment (Count Two).

Plaintiffs seek declaratory judgments that the following policies are unconstitutional, illegal, invalid, and unenforceable because of race discrimination in violation of the equal protection clause: (1) the cap on minority students who may attend Hartford magnet schools, and (2) the use of race in the RSCO lottery. They also seek a permanent prohibitory injunction

enjoining State Defendants and Defendant Stallings from enforcing the cap on black and Hispanic students who may attend Hartford's magnet schools.

State Defendants, Defendant Stallings, and the Intervenors all filed motions for judgment on the pleadings. For the following reasons, the State Defendants' motion for judgment on the pleadings and the Intervenors' motion for judgment on the pleadings are **DENIED**. Defendant Stallings' motion for judgment on the pleadings is **GRANTED**, and the case against Defendant Stallings and the Hartford Board of Education is dismissed without prejudice. The case shall proceed to discovery against the following defendants: Dianna Wentzell; Glen Peterson; Allan Taylor; Ned Lamont; and, William Tong.[1]

## I.  Standard of Review

"The standard for granting a Rule 12(c) motion for judgment on the pleadings is identical to that of a Rule 12(b)(6) motion for failure to state a claim." *Patel v. Contemporary Classics of Beverly Hills*, 259 F.3d 123, 126 (2d Cir. 2001). When deciding a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, I must accept the material facts alleged in the complaint as true, draw all reasonable inferences in favor of the plaintiff, and decide whether the plaintiff has set forth a plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 677–80 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007).

Under *Twombly*, "[f]actual allegations must be enough to raise a right to relief above the speculative level," and assert a cause of action with enough heft to show entitlement to relief and "enough facts to state a claim to relief that is plausible on its face." 550 U.S. at 555, 570; *see also Iqbal*, 556 U.S. at 679 ("While legal conclusions can provide the framework of a complaint, they

---

[1] Because the Governor of Connecticut and Attorney General of Connecticut are sued in their official capacities, Ned Lamont is substituted for Dannel Malloy and William Tong is substituted for George Jepsen.

2

must be supported by factual allegations."). The plausibility standard set forth in *Twombly* and *Iqbal* obligates the plaintiff to "provide the grounds of his entitlement to relief" through more than "labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555 (quotation marks omitted). Plausibility at the pleading stage is nonetheless distinct from probability, and "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of [the claims] is improbable, and . . . recovery is very remote and unlikely." *Id.* at 556 (quotation marks omitted).

## II. Background

The following facts are drawn primarily from Plaintiffs' complaint. In 1989, ten families filed a class action in Hartford Superior Court alleging racial discrimination and segregation in Connecticut, including in Hartford and its suburbs. Compl. at ¶ 28. The case, *Sheff v. O'Neill*, resulted in a ruling by the Connecticut Supreme Court requiring the State of Connecticut to provide all schoolchildren with a "substantially equal educational opportunity", including a requirement that the schools would not be "substantially impaired by racial and ethnic isolation." *Id.* at ¶ 29, citing *Sheff v. O'Neill*, 238 Conn. 1, 24 (1996). The Connecticut Supreme Court remanded the case to the Superior Court to oversee the enactment of remedial programs to address the issue of racial and ethnic isolation in the Hartford schools. *Id.*

As a result of the *Sheff* decision, the Connecticut Legislature passed Public Act 97-290, which adopted many of the recommendations contained in a report issued by Governor John Rowland's Education Improvement Panel, including interdistrict magnet and charter schools and public school choice programs beyond neighborhood schools. *Id.* at ¶¶ 28-29. The program replaced a voluntary busing system that had been operating since 1966. *Id.* at ¶ 32. The Regional

School Choice Office (RSCO) was created to operate and conduct a lottery process to place children in magnet schools and other public schools. *Id.* at ¶ 33.

In 1998, the *Sheff* plaintiffs requested additional remedial action. *Id.* at ¶ 34. Negotiations led to a process by which reducing racial isolation would be measured for a period of four years. *Id.* at ¶¶ 36-38. After that period, and after the City of Hartford intervened in the case, another stipulation was reached in 2008, which included a "Desegregation Standard" that required "Sheff Region"[2] interdistrict magnet schools to maintain no more than 75% minority-student enrollment in order to receive operating grants from the State of Connecticut. *Id.* at ¶¶ 38-39. That stipulation also put forth a goal that 41% of minority students would be in "reduced isolation settings" within five years. The Desegregation Standard was later incorporated into the definition of "reduced isolation setting" and was altered to exclude all minorities except for black and Hispanic students. The current stipulation includes the requirement of a total school enrollment in accordance with the reduced isolation setting standards for interdistrict magnet school programs, meaning that the total percentage of enrolled students who identify as black or Hispanic must be limited to no more than 75% of students in a magnet school. *Id.* at ¶ 42, 46.

To determine which magnet school a student may attend, RSCO operates a school choice lottery. *Id.* at ¶ 50. Plaintiffs allege that the RSCO lottery "uses race to carefully engineer the

---

[2] "Sheff Region" is defined in the Phrase III Stipulation in *Sheff v. O'Neill*, as: "[a]s defined in the original complaint, the Sheff Region includes the school districts of Avon, Bloomfield, Canton, East Granby, East Hartford, East Windsor, Ellington, Farmington, Glastonbury, Granby, Hartford, Manchester, Newington, Rocky Hill, Simsbury, South Windsor, Suffield, Vernon, West Hartford, Wethersfield, Windsor, and Windsor Locks. For purposes of meeting compliance requirements pursuant to [the Phase III Stipulation], other school districts outside the Sheff Region and their resident students shall participate in Sheff-related school choice programming through the Regional School Choice Office and students attending such schools/programs shall be counted for purposes of compliance with this Stipulation." *See* Doc. No. 34-2, Exhibit A to State Defendants' Motion for Judgment on the Pleadings, at 4-5.

racial makeup of magnet schools in Hartford" and that state and local officials "test and tweak the lottery in order to tip the scales in favor of white and Asian applicants." *Id.* at ¶ 55-60.

Plaintiffs filed the complaint on February 15, 2018 (Doc. No. 1). State Defendants filed a motion for judgment on the pleadings, or in the alternative, motion for summary judgment, on April 27, 2018 (Doc. No. 34). On May 8, 2018, eight current and proposed plaintiffs in the *Sheff* litigation, Elizabeth Horton Sheff, Aldwin Allen, Suzann Beckett, Charles Hollis, Sandra Vermont-Hollis, Tyasha Adams Roberts, Amanda Soto, and Nordia Stone ("Intervenors") filed a motion to intervene on their own behalves and/or on behalf of their minor children (Doc. No. 35). I held a status conference on May 10, 2018, and granted the motion to intervene on that date. Defendant Stallings, Chairperson of the Hartford Board of Education, moved separately for judgment on the pleadings on June 15, 2018 (Doc. No. 56). The Intervenors also moved for judgment on the pleadings that same day (Doc. No. 58). Plaintiffs responded on July 13, 2018 (Doc. No. 62). Replies were filed in early August (Doc. Nos. 64, 65, and 67). I scheduled a hearing, which took place on October 16, 2018 (Do. No. 73).

**III.    Discussion**

State Defendants argue that their actions regarding the policy at issue were and are narrowly tailored pursuant to a compelling state interest. *See* Doc. No. 34. Defendant Stallings argues that the complaint against him is "devoid of allegations pertaining to the Hartford Board's role" regarding the policy at issue, and that the complaint fails to state a plausible claim for relief with regard to Defendant Stallings and the Hartford Board of Education. *See* Doc. No. 56. Intervenors argue that I should abstain from deciding the other motions for judgment on the pleadings while the state court proceedings in the *Sheff* case are pending. *See* Doc. No. 58. They

5

argue in the alternative that the State Defendants should be subject to rational basis review rather than strict scrutiny. *Id.*

The issue of standing was raised by the Intervenors in their motion for judgment on the pleadings, and I requested supplemental briefing after the October 16, 2018 hearing (Doc. No. 72). Intervenors argue that Plaintiffs do not have standing regarding either claim, and State Defendants argue that Plaintiffs have standing only to pursue Count One, challenging the cap on the percentage of minority students admitted to Hartford charter schools. Plaintiffs contend that they have standing to pursue both claims.

Finally, State Defendants and Defendant Stallings have responded to my May 10, 2018 order instructing the parties to submit questions for potential certification to the Supreme Court of Connecticut (Doc. No. 39).

A. <u>Intervenors' Motion for Judgment on the Pleadings</u>

Intervenors request that I abstain from deciding Defendants' motions for judgment on the pleadings while the state court proceedings in *Sheff* are pending. Intervenors' Motion, Doc. No. 58-1, at 13. They rely on the *Pullman* abstention doctrine for support. Plaintiffs, however, argue that *Pullman* abstention is inappropriate here. Plaintiffs' Combined Response, Doc. No. 62, at 30.

Under the *Pullman* abstention doctrine, the Supreme Court has "required deferral, causing a federal court to 'sta[y] its hands,' when a constitutional issue in [a] federal action will be mooted or presented in a different posture following conclusion of [a] state-court case." *Growe v. Emison*, 507 U.S. 25, 32 (1993). The Second Circuit has held that three basic conditions must be present to trigger *Pullman* abstention: "First, the state statute must be unclear or the issue of state law uncertain; second, resolution of the federal issue must depend upon the

6

interpretation given to the ambiguous state provision; and third, the state law must be susceptible of an interpretation that would avoid or modify the federal constitutional issue." *United Fence & Guard Rail Corp. v. Cuomo*, 878 F.2d 588, 594 (2d Cir. 1989).

Intervenors contend that the issue whether the reduced isolation standard is an appropriate remedy in *Sheff* is currently before the Connecticut Superior Court. Intervenors' Motion, Doc. No. 58-1, at 14 (citing Exhibit J to Intervenor's Motion, Doc. No, 58-12, Superior Court Order). Intervenors argue that the "*Sheff* plaintiffs' recent motion for a preliminary injunction was the first time in which any Connecticut court was asked to expound on the propriety of the reduced isolation standard. The [S]uperior [C]ourt's rejection of the State Defendant's premature invitation to rule on these issues before the evidentiary hearing makes it evident that issues of state law remain uncertain." *Id.*[3]

Plaintiffs argue that the current law regarding the requirement for reduced isolation is unambiguous, and that an argument that an issue might become ambiguous sometime in the future is not enough to warrant abstention. Plaintiffs' Combined Response, Doc. No. 62, at 32. Plaintiffs also argue that because the Superior Court has approved past stipulations containing the reduced isolation standard, the issue is not ambiguous. *Id.*

I agree with Plaintiffs. Exhibit J provides insufficient evidence for the contention that the issue whether the reduced isolation standard is an appropriate remedy in *Sheff* will soon be decided by the Connecticut Superior Court. There is no indication by the Connecticut Superior Court that the law is currently unsettled, and therefore I need not address the second and third

---

[3] In support of that contention, Intervenors cite to a Superior Court order regarding a motion in limine that states, "The court understands the state's desire to clarify or restrict the subject matter of the hearing. However, the future path for this case is dependent upon evidence received at the hearing and any limitation at this stage is unwarranted. The motion is thus denied." Exhibit J to Intervenor's Motion, Doc. No, 58-12, Superior Court Order.

prongs outlined in *United Fence & Guard Rail Corp.*, 878 F.2d at 594. Accordingly, Intervenors' motion for judgment on the pleadings is denied.

B. State Defendants' Motion for Judgment on the Pleadings

Procedurally, State Defendants argue that I should take judicial notice of several matters that they argue relate to the pleadings, State Defendants' Memorandum in Support of their Motion for Judgment on the Pleadings, Doc. No. 34-1, at 7 ("State Defendants' Memo"). Substantively, they argue that all of their actions were taken pursuant to a compelling state interest and were narrowly tailored to achieve that interest. *Id.* at 2-3. Finally, they request that I deny any injunction as unnecessary, and deny any associated fees and costs. *Id.* at 7.

1. *Judicial Notice*

State Defendants argue that in addition to considering all pleadings, including affirmative defenses, I am "also free to consider attachments to the pleadings where warranted, matters of which judicial notice may be taken, and other suitable evidentiary materials, including affidavits where appropriate." State Defs' Memo, Doc. No. 34-1, at 7. Plaintiffs argue that judicial notice is improper here because all findings and studies proffered by State Defendants are "matters of dispute."[4] Plaintiffs' Combined Response, Doc. No. 62, at 7.

Federal Rule of Evidence 201, which governs adjudicative facts, states that a court "may judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined

---

[4] Plaintiffs do not object to my consideration of Intervenors' exhibits G, H, and J, which are orders of the Superior Court. *See* Plaintiffs' Combined Response, Doc. No. 62, at 7, fn. 6. Exhibits G and H are also referenced in Plaintiffs' Complaint.

from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201; *see* Judicial Notice of Adjudicative Facts, 1 Federal Evidence Rule 201.

On a motion for judgment on the pleadings, I can consider "the complaint, the answer, any written documents attached to them, and any matter of which the court can take judicial notice for the factual background of the case." *L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 422 (2d Cir. 2011) (citing *Roberts v. Babkiewicz*, 582 F.3d 418, 419 (2d Cir. 2009)). A complaint is also "deemed to include any written instrument attached to it as an exhibit, materials incorporated in it by reference, and documents that, although not incorporated by reference, are 'integral' to the complaint." *Id.* (citing *Sira v. Morton*, 380 F.3d 57, 67 (2d Cir. 2004)).

The Second Circuit has held that "[w]hen a motion to dismiss presents material outside the pleadings, a district court may convert the motion into one for summary judgment provided that the non-moving party receives notice and an opportunity to respond." *Cancel v. Amakwe*, 551 F. App'x 4, 5 (2d Cir. 2013). Moreover, Rule 12(d) of the Federal Rules of Civil Procedure provides that if matters outside the pleadings are presented to, and not excluded by, the district court on a motion to dismiss, "the motion must be treated as one for summary judgment under Rule 56 [and] [a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." *See also Amaker v. Weiner*, 179 F.3d 48, 50 (2d Cir. 1999) (vigorous enforcement of conversion requirement ensures that courts will not engage in fact-finding when ruling on motion to dismiss and that plaintiffs are given fair chance to contest defendants' evidence). Rule 56 requires that parties be given at least ten days' notice before converting a Rule 12(b)(6) motion to a motion for summary judgment. *Beacon Enterprises, Inc. v. Menzies*, 715 F.2d 757, 767 (2d Cir. 1983).

9

State Defendants ask that I consider Defendant Peterson's affidavit, in addition to the previous Superior Court approved stipulations. State Defs' Memo, Doc. No. 34-1, at 7 (referencing Exhibit H, attached to Doc. No. 34-1. The affidavit "describes in detail the RSCO lottery and processes for populating seats in the *Sheff* interdistrict magnet schools."). State Defendants also request that their motion for judgment on the pleadings be converted into a motion for summary judgment. *Id.* at 7-8. Plaintiffs argue that Peterson's "affidavit may not be considered without converting the State's Motion into a Motion for Summary Judgment." *See* Plaintiffs' Combined Response, Doc. No. 62, at 6.

Intervenors urge me to take judicial notice of "the state statutes, the *Sheff* stipulations, and judicial orders and opinions, and any other information of which the pleaders 'had notice and which were integral to their claim[.]'" Intervenors' Motion, Doc. No. 58-1, at 3. Intervenors rely on Peterson's affidavit, publicly available magnet enrollment statistics and other data that explain the lottery system in Hartford schools to make their arguments. *Id.*

It would be improper to take judicial notice of Peterson's affidavit because its contents are *not* universally known and its accuracy *can* be questioned. *See* Fed. R. Evid. 201. Judicial Notice of Adjudicative Facts, 1 Federal Evidence Rule 201(b)(2) (4th ed.).

Furthermore, Peterson is a defendant in the case, and the facts regarding the implementation of the lottery program are "in dispute." *Id.* The Peterson affidavit can be properly considered on a motion for summary judgment, after both sides have been afforded an opportunity for discovery.[5] I will not consider the contents of the Peterson affidavit at the current stage of the proceedings.

---

[5] It is, however, proper to take judicial notice of any pertinent state statutes, judicial orders and opinions, and the *Sheff* stipulations and orders because those documents "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." *See* Fed. R. Evid. 201 Judicial Notice of Adjudicative Facts, 1 Federal Evidence Rule 201(b)(2).

2. *Strict Scrutiny*

Strict scrutiny applies to all government classifications that are facially discriminatory based on race. *See Adarand Constructors, Inc. v. Pena,* 515 U.S. 200, 225–26 (1995). In order to survive strict scrutiny, the challenged classification must serve a compelling government interest, and be narrowly tailored to further that interest. *See id.* at 227.

Although Intervenors argue that the State Defendants must merely pass a rational basis review, the policy at issue is discriminatory on its face.[6] Therefore, in order to grant their motion for judgment on the pleadings, Defendants must show that their actions were taken to achieve a compelling state interest, and that the policy at issue was narrowly tailored to achieve that interest.

    i. <u>Narrow Tailoring</u>

State Defendants argue that the factors outlined in *United States v. Paradise* should be used to determine whether "race-conscious remedies are appropriate[.]" State Defs' Memo, Doc. No. 34-1, 17-18. *See Paradise*, 480 U.S. 149, 171 (1987) (listing the following factors: "the necessity for the relief and the efficacy of alternative remedies; the flexibility and duration of the relief, including the availability of waiver provisions; the relationship of the numerical goals to the relevant labor market; and the impact of the relief on the rights of third parties).

Plaintiffs argue that the factors outlined in *Paradise* are not appropriate where, as here, the compelling interest is something other than remedying a state's own past discrimination.

---

[6] Intervenors argue that the *Sheff* remedies do not classify students based on race, but instead use race-neutral methods to achieve diversity, "including the mere consideration of school and neighborhood demographics, which the Supreme Court has recognized and are not subject to strict scrutiny." Intervenors' Motion, Doc. No. 58-1, at 17. Intervenors argue that the reduced isolation standard is "simply a tool that the *Sheff* court and parties use to determine whether a school is racially isolated." *Id.* However, because magnet school programs that fail to integrate risk losing funding, as measured by whether there are more than 75% black and Hispanic students enrolled in a school, the policy is facially discriminatory, and thus strict scrutiny applies to the policy at issue here.

Plaintiffs' Combined Response, Doc. No. 62, at 24. Plaintiffs argue that I should instead use the framework provided in *Parents Involved in Community Schools v. Seattle School District No. 1*, 551 U.S. 701 (2007), where a majority of the Supreme Court held that a traditional narrow tailoring analysis was proper. Plaintiffs' Combined Response, Doc. No. 62, at 23.

The Second Circuit has held that "the question of whether the precise goals of [a program designed to address *de facto* segregation] requires a fact-specific determination that we believe should be made by the District Court in the first instance." *Brewer v. W. Irondequoit Cent. Sch. Dist.*, 212 F.3d 738, 752 (2d Cir. 2000). Therefore, whether I apply the factors put forth in *Paradise* or apply a traditional narrow tailoring analysis to the purported racial quota, as set forth by the Supreme Court in *Parents Involved*, it will be necessary to engage in a "fact specific inquiry" as required by the Second Circuit.

A fact specific inquiry here requires examining Peterson's affidavit regarding the lottery program. Because I have determined that I cannot rely on the Peterson affidavit at the motion for judgment on the pleadings stage of the proceedings, I cannot determine whether the policy at issue is narrowly tailored at the current stage in the pleadings.[7]

### ii. Compelling State Interest

Because I cannot adequately address the question of narrow tailoring without examining the Peterson affidavit, I reserve judgment on the issue whether State Defendants acted and continue to act pursuant to a compelling state interest. That issue can only be decided after discovery.

---

[7] State Defendants first argue that the policy at issue complies with guidelines issued by the United States Department of Justice. State Defs' Memo, Doc. No. 34-1, at 16-17. The guidelines encouraged the use of race to achieve diversity in K-12 education. *Id.* The guidelines were rescinded, however, on July 3, 2018. *See* Doc. No. 61. Therefore, the guidelines cannot be relied upon in a narrow tailoring analysis.

State Defendants have not met their burden on their motion for judgment on the pleadings that Hartford's policy written to address *de facto* segregation is narrowly tailored to achieve that interest. Accordingly, the State Defendants' motion for judgment on the pleadings is denied and the case shall proceed to discovery with regard to those defendants.

C. <u>Defendant Stallings' Motion for Judgment on the Pleadings</u>

Defendant Stalling argues that the "majority of Plaintiffs' allegations are 'threadbare' and therefore not entitled to the assumption of truth," pursuant to the first prong in *Iqbal*. Memorandum of Law in Support of Defendant Stallings' Motion for Judgment on the Pleadings, Doc. No. 56-1, at 5 ("Defendant Stallings' Memo") (citing *Iqbal*, 556 U.S. at 679). Defendant Stallings further argues that other than one statement describing the responsibilities of the Hartford Board of Education, the "Complaint contains no further reference to actions or inactions by the Hartford Board or Chairman Stallings." *Id.* at 5.

Plaintiffs argue that they have "pled sufficient facts" to survive Defendant Stallings' motion. Plaintiffs further argue that they easily meet the Supreme Court's plausibility standard in *Twombly* and *Iqbal* because the determination whether claims are plausible is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Plaintiffs' Combined Response, Doc. No. 62, at 28 (citing *Iqbal*, 556 U.S. at 679).

Plaintiffs do not appear to have pled any material allegations against the Hartford Board of Education or Defendant Stallings in the Complaint. The Complaint contains no allegations regarding the interplay between the Hartford Board and the administration of the RSCO lottery or the creation of the policy being challenged. Therefore, I dismiss the claims against the Hartford Board of Education and Defendant Stalling without prejudice.

13

D. Standing

After the October 16, 2018 hearing, I requested supplemental briefing on the issue of standing. *See* October 29, 2018 Order, Doc. No. 72.

To have standing, Plaintiffs must show that (1) they suffered a concrete injury; (2) there is a causal connection between the alleged injury and challenged conduct; and (3) the injury can be redressed. *United States v. Hays*, 515 U.S. 737, 743 (1995). It appears that the parties only dispute the second element because they all address the causal connection between considerations regarding race in student admissions to Hartford's magnet schools.

In their supplemental brief, Plaintiffs argue that they have standing to pursue both counts. They contend that they have standing to challenge the cap on minority students because they applied, and were denied admission, to Hartford magnet schools, and that Hartford's use of a cap on minority students "enacts a discriminatory barrier that deprives them of equal treatment in the admissions process." Plaintiffs' Supplemental Brief, Doc. No. 76, at 4. They further argue that "an invalidation of the quota would mean that Plaintiffs will no longer have to compete for seats on the basis of race" and therefore their "injury is redressable by a favorable court decision." *Id.* at 10. Plaintiffs argue that they have standing to challenge the lottery because the lottery and the cap on minority students are "inextricably linked", meaning that the cap applies to the racial composition of the student population overall, so even if the race of students in Hartford is not taken into account, the use of race in the lottery still affects how many minority students can be admitted overall. *Id.* at 12.

State Defendants argue that Plaintiffs have standing to pursue their claim regarding the cap on minority students, but do not have standing to pursue their claim regarding the use of race in the RSCO lottery because students in Hartford are considered according to entirely race-neutral criteria, as explained in detail in the Peterson affidavit. State Defendants' Supplemental

14

Brief, Doc. No. 78, at 3–4. Intervenors argue that Plaintiffs lack standing on both counts because they were denied admission based on race-neutral criteria, and that Hartford students are not subject to the aspect of the lottery process that considers neighborhood demographics. Intervenors' Supplemental Brief on Standing, Doc. No. 77, at 1–2. Defendant Stallings does not argue the issue of standing. *See* Def. Stallings' Response to Court's Request for Supplemental Briefing on the Issue of Plaintiffs' Standing, Doc. No. 74, at 1.

As discussed above, I cannot consider the Peterson affidavit at this stage in the pleadings. Plaintiffs have standing to pursue both counts because the cap on minority students appears to have a direct effect on the number of minority students that will be admitted through the lottery, and, on its face, the policy is alleged to take race into account. Therefore, the issue of standing cannot be resolved at this stage of the case and can be raised following appropriate discovery.

E. Certification

At the status conference on May 10, 2018, I requested that the parties provide briefing regarding (a) whether I should certify questions to the Connecticut Supreme Court, and (b), if so, what questions should be certified. *See* May 10, 2018 Conference Memorandum, Doc. No. 39. The State Defendants request that I certify six questions, and/or any others I wish to formulate, to the Connecticut Supreme Court pursuant to Conn. Gen. Stat. § 51-199b. State Def's Motion, Doc. No. 34-1, at 4-5.[8]

Under Connecticut law, "[t]he Supreme Court may answer a question of law certified to it by a court of the United States . . . if the answer may be determinative of an issue in pending litigation in the certifying court and if there is no controlling appellate decision, constitutional

---

[8] The Hartford Board submitted a separate list of questions, with several of the questions overlapping with the State Defendants' questions. Defendant Stallings' Memo, Doc. No 56-1, at 8.

15

provision or statute of this state." Conn. Gen. Stat. § 51-199b(d). "Th[at] statute grants the Connecticut Supreme Court discretion to review a certified question under certain circumstances; it does not demand that a court certify a question." *Belz v. Peerless Ins. Co.*, 46 F. Supp. 3d 157, 164 (D. Conn. 2014) (Hall, C.J.). Rather, "the decision to certify a question of law to [] Connecticut's highest court is within th[e] [district] [c]ourt's discretion." *Lopez v. Smiley*, 375 F. Supp. 2d 19, 26 (D. Conn. 2005) (Kravitz, J.). I have "discretion to certify questions . . . even where . . . the parties have not requested certification." *See Beck Chevrolet Co. v. GM LLC*, 787 F.3d 663, 681–82 (2d Cir. 2015).

In deciding whether to certify, a federal court should consider, among other factors, "(1) the absence of authoritative state court decisions; (2) the importance of the issue to the state; and (3) the capacity of certification to resolve the litigation." *O'Mara v. Town of Wappinger*, 485 F.3d 693, 698 (2d Cir. 2007). The Second Circuit "ha[s] long recognized that state courts should be accorded the first opportunity to decide significant issues of state law through the certification process, and that, especially where the issues implicate the weighing of policy concerns, principles of comity and federalism strongly support certification." *Cadle Co. v. Fletcher*, 804 F.3d 198, 202 (2d Cir. 2015). "Certification is especially important in categories of cases where, unless there is certification, the state courts are substantially deprived of the opportunity to define state law." *Munn v. Hotchkiss Sch.*, 795 F.3d 324, 334 (2d Cir. 2015).

Federal courts "do not certify every case that meets th[o]se criteria," however, and "even when it is otherwise desirable, [certification] has its costs and may in some instances be foregone." *See O'Mara*, 485 F.3d at 698; *City of Burlington v. Indem. Ins. Co. of N. Am.*, 346 F.3d 70, 75 n.4 (2d Cir. 2003) (Calabresi, J.). "Where possible, it is [my] responsibility to predict

16

how the forum state's highest court would rule." *O'Mara*, 485 F.3d at 698 (citing *DiBella v. Hopkins*, 403 F.3d 102, 111 (2d Cir. 2005)).

In the interests of efficiency and judicial economy, I choose not to certify these questions to the Connecticut Supreme Court. These motions have been pending for several months and certification would slow down the proceedings because the Connecticut Supreme Court would need time to work through the complex issues in the case. It is also unclear whether certification would promote the resolution of the federal causes of action raised in this action. Therefore, the proposed questions shall not be certified at this time.

**IV. Conclusion**

For the foregoing reasons, I am unable to hold that Plaintiffs lack standing at this point. I choose not to certify any questions to the Connecticut Supreme Court. The State Defendants' and Intervenors' motions for judgment on the pleadings are denied because it would be inappropriate to review Defendant Peterson's affidavit at this stage in the litigation, and therefore the question whether State Defendants actions were narrowly tailored and based on a compelling state interest remains open. The claims against the Hartford Board of Education and Defendant Stallings are dismissed without prejudice to repleading within 30 days.

So ordered.

Dated at Bridgeport, Connecticut, this 14th day of March 2019.

/s/ STEFAN R. UNDERHILL
Stefan R. Underhill
United States District Judge